*132 The opinion of the Court was delivered by
DunkiN, Ch.
If this will were for adjudication in Westminster Hall it may be conceded that the construction would not be regarded as doubtful. The testator declares that, on the decease of the life tenant without leaving a child, “ the premises bequeathed shall be the absolute property of such of my children as may be then living, and the issue of such as may be dead, to be equally divided between them, and their heirs, executors, administrators and assigns.” The rule in England as stated by the elementary writers, is this : “ Where a bequest is made to a person described as standing in a certain relation to the testator, and the children of another person standing in the same relation, as to my brother (A) and the children of my brother (B), the distribution is made per capita, and not per stirpes, in which case A takes only a share equal to that of one of the children of B.” Of course it is immaterial, and the distribution is the same where the objects of the testator’s bounty are his own children and grand-children. See 2 Jarm. on Wills, 111, whose positions are fully sustained by the authorities cited. Well settled as the rule seems to be, it has not been regarded as quite satisfactory, or as giving effect to the probable intention of the testator. It has accordingly been held that this mode of construction will yield to a very faint glimpse of a different intention in the context. Jarm. ut supra.
With some qualifications the rule has been recognized in this State. Cole vs. Creyon, 1 Hill, Ch. 311, was a case in which the balance of the testator’s estate, after the determination of a life estate therein in his widow, was directed to be “ equally divided between Henry and Elizabeth Cole’s children and Alexander Creyón, viz., the offspring of Elizabeth Cole’s body, and no other, to be retained in the hands of my executors, until the age of twenty-one years, or days of marriage.” The widow being dead, the children of Henry and Elizabeth *133 Cole filed a bill for partition against Alexander Creyón, claiming that each of them was entitled to an equal share with the defendant — and so it was decreed by the Chancellor, in conformity with the general principle which has been announced. In reforming this judgment the Court of Appeals (per Harper, Ch.) say, “ The cases sufficiently settle that if there be a bequest to the children of A, and the children of B, they take per capita. This rule, however, is entirely arbitrary, and I am not sure that if a different rule had been adopted, the intention of testators would not have been more frequently effected. The rule being settled must be adhered to,” &c.— The Chancellor then proceeds to show that the rule is inapplicable where the title of the devisees is to accrue at different times, as, if there be a bequest to an ascertained individual, and to a class of unascertained individuals (to be ascertained at any future time after the death of the testator,) it vests one-half in the said individual, and the other half in the individuals collectively when they are ascertained. In conformity with this exception it was ruled, that upon the death of the testator his nephew, Alexander Creyón, who was then in esse, took an immediate vested interest in a moiety of the estate, and that the other moiety was to be equally distributed among the children of Elizabeth Crayon alive at the-death of the life-tenant, when the eldest should attain twenty-one years of age.
In Templeton vs. Walker, 3 Rich. Eq. 543, and Collier vs. Collier, id. 555, while the general rule was recognized, a modification or exception was adopted. It was held by the Court of Errors that “wherever the Court is compelled, by the terms of description in a devise or grant, to resort to our Statute of Distributions for the purpose of ascertaining the objects of a gift, we must also resort to the statute to ascertain the proportions in which the donees shall take, unless the instrument making the gift indicates the intention of the donor that a different rule of distribution should be pursued.”
It remains only to inquire whether this case falls within the *134 general rule, or can be properly classed within either of the modifications which have been thus adopted and approved.— The bequest is to such of the children of the testator as may be alive at the decease of the life-tenant, and the issue of such as may be dead, to be equally divided between them. The death of the life-tenant was the period at which the title of all the legatees accrued, and the title of none was ascertained until that time. It is not like Cole vs. Creyon, a gift to an ascertained person and a class of persons to be afterwards ascertained. No child of the testator took an immediate vested interest on his father’s decease, but could only take in the event that such child survived testator’s daughter, Sa-rina; and at that time the rights of all the issue of any deceased child were also ascertained and fixed.
Nor do the terms of description of the objects of testator’s bounty require the Court, as in Templeton vs. Walker, to resort to the Statute of Distributions to ascertain those objects. The terms are to “ such of my children as may be then living and the issue of such as may be dead.” This description demands no reference to the statute, nor would the statute shed any light upon the subject if the terms of the gift were of doubtful interpretation. See Perdriau vs. Wells, 5 Rich. Eq. 20.
It was not contended that the context of the will afforded any evidence of a different intention in the mind of the testator from that which the terms of the bequest itself, technically, or legally, import. Of course the Court is not at liberty to travel out of the will and speculate upon the probable intention of the testator as deduced from the ordinary motives or feelings, which would influence mankind in the case presented. The testator has spoken, and the Court has no other province than to interpret his language. If the testator had contemplated the contingency which has occurred, and had intended a different distribution, he might have declared that in such event the issue of any deceased child should represent their parent, and take among them the parent’s share; but if, on the other hand, he *135 Lad intended that, in such event, all the objects of his bounty should be placed upon an equal footing, he could scarcely have employed more appropriate words to manifest such intention than those here adopted; that it should, in such event, be the absolute property of such of his children as might be then living and the issue of such as might be dead, to be equally divided between them, and their heirs, executors, administrators and assigns. This is the language of the bequest, and the Court is not authorized to infer from it any intention that the distribution should be otherwise than per capita, so that each object of his bounty may share equally.
In reciting the names of the parties in the Circuit decree some inaccuracy occurred, not important in the discussion of the principle, but which it is proper to correct.
It is ordered and decreed that the Circuit decree be reformed so that, in the partition therein directed, the property be equally divided between Mary Barksdale, Mary Y. Macbeth, James R. Macbeth, William L. Macbeth, Catharine Macbeth, Mary Lee Macbeth, Sabina Macbeth, Edward Macbeth, Alexander Macbeth, Adelaide Huguenin, Anna Huguenin, Thomas Huguenin, Ella Huguenin, Cornelius Huguenin, Emma Julia Edwards, George Edwards, George Edwards, Jr., Charles L. 0. Hammond and Elizabeth Hammond, so that each one of the said parties shall take an equal share of the said estate, according to the principles of this decree. In all other respects the decree of the Circuit Court is affirmed.
Johnston and WaRdlaw, CO., concurred.

Decree modified.